No. 24-11996

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

*Jane Doe et al.*,
Plaintiffs-Appellees,

v.

*Surgeon General, State of Florida et al.*,
Defendants-Appellants.

U.S. District Court for the Northern District of Florida, No. 4:23-cv-114
(Hinkle, J.)

# MOTION FOR RECONSIDERATION OF
# AUGUST 26, 2024 ORDER GRANTING A STAY PENDING
# APPEAL

Christopher F. Stoll
Kelly Jo Popkin
NATIONAL CENTER FOR
LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
(415) 365-1320
cstoll@nclrights.org

*Counsel for Plaintiffs-Appellees*

Thomas E. Redburn, Jr.
Maya Ginsburg
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 262-6700
tredburn@lowenstein.com

(Additional counsel listed on inside
cover)

Simone Chriss
Chelsea Dunn
SOUTHERN LEGAL COUNSEL
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890

Chris Erchull
GLBTQ LEGAL ADVOCATES &
DEFENDERS
18 Tremont
Suite 950
Boston, MA 02108
(617) 426-1350

Sarah Warbelow
Cynthia Cheng-Wun Weaver
HUMAN RIGHTS CAMPAIGN
FOUNDATION
1640 Rhode Island Avenue NW
Washington, D.C. 20036
(202) 993-4180

*Counsel for Plaintiffs-Appellees*

*Jane Doe et al., v. Surgeon General, State of Florida et al.,*
No. 24-11996

**CERTIFICATE OF INTERESTED PERSONS AND**

**CORPORATE DISCLOSURE STATEMENT**

Per Rule 26.1 and Circuit Rule 26.1, Defendants-Appellants certify

that the following have an interest in the outcome of this case:

1. Abdul-Latif, Hussein, *Amicus*

2. Academic Pediatric Association, *Amicus*

3. Ackerman, Scot, *Defendant*

4. Ahmed, Aziza, *Amicus*

5. Alstott, Anne, *Amicus*

6. American Academy of Child and Adolescent Psychiatry, *Amicus*

7. American Academy of Family Physicians, *Amicus*

8. American Academy of Nursing, *Amicus*

9. American Academy of Pediatrics, *Amicus*

10. American Association of Physicians for Human Rights, Inc., *Amicus*

11. American College of Obstetricians and Gynecologists, *Amicus*

12. American College of Osteopathic Pediatricians, *Amicus*

13. American College of Physicians, *Amicus*

14. American Medical Association, *Amicus*

15. American Pediatric Society, *Amicus*

16. Andersen, Alison, *Counsel for Amicus*

17. Antommaria, Armand, *Dekker Witness*[1]Archer, Phil, *Former Defendant*

18. Archer, Phil, *Former Defendant*

19. Aronberg, Dave, *Former Defendant*

20. Association of American Medical Colleges, *Amicus*

21. Association of Medical School Pediatric Department Chairs, Inc., *Amicus*

22. Baker, Kellan, *Dekker Witness*

23. Bakkedahl, Thomas, *Former Defendant*

24. Barsoum, Wael, *Defendant*

25. Bartlett, Bruce, *Former Defendant*

26. Basford, Larry, *Former Defendant*

27. Beato, Michael, *Counsel for Defendants*

28. Bell, Daniel, *Former Counsel for Defendants*

---

[1] Pursuant to the District Court Final Order (Doc. 223, at 2-3), the record in this case also relies on the "evidence presented during the trial of a separate case in this court with overlapping issues, *Dekker v. Weida,* No. 4:22cv325-RH-MAF." Thus, the witnesses in the *Dekker* case are included in this CIP. The *Dekker* case is on appeal in this Court. 23-12155.

29.     Benson, Matthew, *Defendant*

30.     Biggs, Michael, *Dekker Witness*

31.     Blickenstaff, David, *Counsel for Amicus*

32.     Boe, Bennett, *Former Plaintiff*

33.     Boe, Brenda, *Former Plaintiff*

34.     Brackett, John Matthew, *Dekker Witness*

35.     Bridges, Khiara, *Amicus*

36.     Brodsky, Ed, *Former Defendant*

37.     Bruggeman, Brittany, *Witness*

38.     Bruno, Nichole, *Plaintiff Gavin Goe's Doctor*

39.     Campbell, Jack, *Former Defendant*

40.     Cantor, James, *Dekker Witness*

41.     Chriss, Simone, *Counsel for Plaintiffs*

42.     Clemens, Jonathan, *Witness*

43.     Coe, Carla, *Former Plaintiff*

44.     Coe, Christina, *Former Plaintiff*

45.     Coffman, Gregory, *Defendant*

46.     Cohen, David, *Amicus*

47.     Cohen, I. Glenn, *Amicus*

48. Creegan, Chris, *Defendant*

49. Cruz Evia, Rebecca, *Former Plaintiff*

50. Cryan, Michael, *Counsel for Amicus*

51. Dalton, Ann, *Dekker Witness*

52. Dandeneau, Debra, *Counsel for Amicus*

53. Dekker, August, *Dekker Plaintiff*

54. Derick, Amy, *Defendant*

55. Di Pietro, Tiffany, *Defendant*

56. Diamond, David, *Defendant*

57. Doe, Jane, *Plaintiff*

58. Doe, Susan, *Plaintiff*

59. Doe, Jane, *Dekker Plaintiff*

60. Doe, John, *Dekker Plaintiff*

61. Doe, Susan, *Dekker Plaintiff*

62. Donovan, Kevin, *Dekker Witness*

63. Ducatel, Watson, *Defendant*

64. Dunn, Chelsea, *Counsel for Plaintiffs*

65. Durrett, John, *Former Defendant*

66. Edmiston, Kale, *Dekker Witness*

67.    Endocrine Society, *Amicus*

68.    English, Jeffrey, *Dekker Witness*

69.    Erchull, Christopher, *Counsel for Plaintiffs*

70.    Florida Agency for Healthcare Administration, *Dekker Defendant*

71.    Florida Board of Medicine, *Former Defendant*

72.    Florida Board of Osteopathic Medicine, *Former Defendant*

73.    Florida Chapter of the American Academy of Pediatrics, *Amicus*

74.    Foe, Fiona, *Former Plaintiff*

75.    Foe, Freya, *Former Plaintiff*

76.    Fox, Amira, *Former Defendant*

77.    Galarneau, Charlene, *Amicus*

78.    Garcia, Maria, *Defendant*

79.    Ginsburg, Maya, *Counsel for Plaintiffs*

80.    Gladson, William, *Defendant*

81.    Goe, Gavin, *Plaintiff*

82.    Goe, Gloria, *Plaintiff*

83.    Goldberg, Noah, *Counsel for Amicus*

84.    Goodman, Kenneth, *Witness*

85.  Grossman, Joanna, *Amicus*

86.  Grossman, Miriam, *Dekker Witness / Third-party*

87.  Haas, Brian, *Former Defendant*

88.  Hamel, Lucien, *Plaintiff*

89.  Hart, Joseph, *Former Counsel for Defendants*

90.  Hartnett, Kathleen*, Counsel for Amicus*

91.  Helstrom, Zoe, *Counsel for Amicus*

92.  Hinkle, Robert, *U.S. District Court Judge*

93.  Hruz, Paul William, *Dekker Witness*

94.  Hunter, Patrick, *Defendant*

95.  Hutton, Kim, *Dekker Witness*

96.  Ikemoto, Lisa, *Amicus*

97.  Isasi, William, *Counsel for Amicus*

98.  Jackson, Valerie, *Defendant*

99.  Jacobs, Arthur, *Counsel for Former Defendants &
     Defendant*

100.  Janssen, Aron Christopher, *Dekker Witness & Witness*

101.  Jazil, Mohammad, *Counsel for Defendants*

102.  Justice, Nicole, *Defendant*

103.  K.F., *Dekker Plaintiff*

104.  Kaliebe, Kristopher Edward, *Dekker Witness*

105.  Kamody, Rebecca, *Amicus*

106.  Kang, Katelyn, *Counsel for Amicus*

107.  Karasic, Dan, *Dekker Witness & Witness*

108.  Kirsh, William, *Defendant*

109.  Kramer, Brian, *Former Defendant*

110.  Kuper, Laura, *Amicus*

111.  Ladapo, Joseph, *Defendant*

112.  Ladue, Jade, *Dekker Plaintiff*

113.  Langford, Vernon, *Witness*

114.  Lannin, Cortlin, *Counsel for Amicus*

115.  Laidlaw, Michael, *Dekker Witness*

116.  Lappert, Patrick, *Dekker Witness*

117.  Larizza, R.J., *Former Defendant*

118.  Levi, Jennifer, *Counsel for Plaintiffs*

119.  Levine, Stephen, *Dekker Witness & Witness*

120.  Loe, Linda, *Former Plaintiff*

121.  Loe, Lisa, *Former Plaintiff*

122. Lopez, Susan, *Former Defendant*

123. Lynch, Myles S., *Counsel for Defendants*

124. Madden, Ginger, *Former Defendant*

125. Mandelbaum, Sara, *Counsel for Plaintiffs*

126. Manian, Maya, *Amicus*

127. Marstiller, Simone, *Dekker Former Defendant*

128. McNamara, Meredithe, *Amicus*

129. Minter, Shannon, *Counsel for Plaintiffs*

130. Mondry, Emily, *Counsel for Amicus*

131. Moody, Ashley, *Former Defendant*

132. Mor, Yuval, *Counsel for Amicus*

133. Mortensen, Monica, *Defendant*

134. Nangia, Geeta, *Dekker Witness*

135. National Association of Pediatric Nurse Practitioners, *Amicus*

136. Nelson, Melissa, *Former Defendant*

137. Noel, Olivia, *Former Plaintiff*

138. Oberman, Michelle, *Amicus*

139. Olson-Kennedy, Johanna, *Dekker Witness*

140. Pages, Luz, *Defendant*

141.  Patel, Ami, *Counsel for Plaintiffs*

142.  Pediatric Endocrine Society, *Amicus*

143.  Peral, Stephanie, *Former Counsel for Plaintiffs*

144.  Percival, James, II, *Counsel for Defendants*

145.  Perko, Gary, *Counsel for Defendants*

146.  Pimentel, Eleonor, *Defendant*

147.  Poe, Patricia, *Former Plaintiff*

148.  Poe, Paul, *Former Plaintiff*

149.  Pope, Kai, *Former Plaintiff*

150.  Popkin, Kelly Jo, *Counsel for Plaintiffs*

151.  Pratt, Joshua, *Former Counsel for Defendants*

152.  Pryor, Harold, *Former Defendant*

153.  Purvis, Dara, *Amicus*

154.  Rebouche, Rachel, *Amicus*

155.  Redburn, Thomas, Jr., *Counsel for Plaintiffs*

156.  Roman, Sven, *Witness*

157.  Romanello, Nicholas, *Defendant*

158.  Rothstein, Brit, *Dekker Plaintiff*

159. Rundle, Katherine, *Former Defendant*

160. Schechter, Loren, *Dekker Witness & Witness*

161. Scott, Sophie, *Dekker Witness*

162. Shumer, Daniel, *Dekker Witness & Witness*

163. Silbey, Jessica, *Amicus*

164. Silverman, Lawrence, *Counsel for Plaintiffs*

165. Societies for Pediatric Urology, *Amicus*

166. Society for Adolescent Health and Medicine, *Amicus*

167. Society for Pediatric Research, *Amicus*

168. Society of Pediatric Nurses, *Amicus*

169. Spektrum Health, Inc., *Amicus*

170. Stafford, William, III, *Counsel for Defendants*

171. Starr, Jason, *Counsel for Plaintiffs*

172. Stoll, Christopher, *Counsel for Plaintiffs*

173. SunServe, *Amicus*

174. Szilagyi, Nathalie, *Amicus*

175. Transgender Health Education Network, *Amicus*

176. TransSocial, *Amicus*

177. Ulrich, Michael, *Amicus*

178. Van Meter, Quentin, *Dekker Witness*

179. Van Mol, Andre, *Dekker Witness*

180. Vazquez, Paul, *Witness*

181. Veroff, Julie, *Counsel for Amicus*

182. Veta, D. Jean, *Counsel for Amicus*

183. Vigil, Anegla, *Counsel for Amicus*

184. Vila, Hector, *Defendant*

185. Ward, Dennis, *Former Defendant*

186. Wasylik, Michael, *Defendant*

187. Weaver, Cynthia, *Counsel for Plaintiffs*

188. Weida, Jason, *Dekker Defendant*

189. Whitaker, Henry, *Counsel for Defendants*

190. Williams, Gregory, *Defendant*

191. Witthoeft, Emily, *Counsel for Defendants*

192. World Professional Association for Transgender Health, *Amicus*

193. Worrell, Monique, *Former Defendant*

194. Zachariah, Zachariah, *Defendant*

195. Zanga, Joseph, *Dekker Witness*

*Jane Doe et al., v. Surgeon General, State of Florida et al.,*
No. 24-11996
Per Circuit Rule 26.1-2(c), Plaintiffs-Appellees certify that the CIP

contained herein is complete.

Date: September 3, 2024

*s/ Thomas E. Redburn, Jr.*
Thomas E. Redburn, Jr.
Counsel for Plaintiffs-Appellees

# TABLE OF CONTENTS _Toc176263902

INTRODUCTION ........................................................................................... 1

PROCEDURAL HISTORY ......................................................................... 5

ARGUMENT ................................................................................................ 6

I.   THE STAY ORDER'S REQUIREMENT OF PROOF THAT
     ALL OR MOST LEGISLATORS WERE MOTIVATED BY
     ANIMUS CONFLICTS WITH ARLINGTON HEIGHTS ............... 6

II.  THE STAY ORDER'S CONCLUSION THAT THE
     DISTRICT COURT SHOULD NOT HAVE ANALYZED
     THE SAME-DECISION DEFENSE CONFLICTS WITH
     PRECEDENT ................................................................................. 12

III. THE STAY ORDER'S STATEMENT THAT
     HEIGHTENED SCRUTINY WOULD NOT APPLY EVEN
     IF ANIMUS WAS ESTABLISHED CONFLICTS WITH
     CLEAR PRECEDENT ON THIS ISSUE ....................................... 14

CONCLUSION ........................................................................................... 18

CERTIFICATE OF COMPLIANCE ......................................................... 20

CERTIFICATE OF SERVICE ................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. St. Johns County,*
  57 F.4th 791 (11th Cir. 2022) (en banc) .................................. 14, 16, 17

*Dekker v. Weida,*
  679 F. Supp. 3d 1271 (N.D. Fla. 2023) ................................................ 11

*Dep't of Agric. v. Moreno,*
  413 U.S. 528 (1973) ............................................................................... 17

*Eknes-Tucker v. Governor of Alabama,*
  80 F.4th 1205 (11th Cir. 2023) ................................................. 4, 14, 15

*Hunter v. Underwood,*
  471 U.S. 222 (1985) ......................................................................... 12, 13

*Johnson v. Gov. of Fla.,*
  405 F.3d 1214 (11th Cir. 2005) .............................................................. 3

*Mt. Healthy City School District Board of Education v. Doyle,*
  429 U.S. 274 (1977) ......................................................................... 12, 13

*Pers. Adm'r of Mass. v. Feeney,*
  442 U.S. 256 (1979) ......................................................................... 14, 16

*Romer v. Evans,*
  517 U.S. 620 (1996) ........................................................................... 9, 17

*Thompson v. Sec'y of State for Ala.,*
  65 F.4th 1288, 1297 (11th Cir. 2023) ................................. 3, 12, 13, 14

*Village of Arlington Heights v. Metropolitan Housing
  Development Corp.,*
  429 U.S. 252 (1977) ................................................................... *passim*

*L.W. ex rel. Williams v. Skrmetti,*
  73 F.4th 408 (6th Cir. 2023) .............................................................. 15

ii

**Other Authorities**

Equal Protection Clause............................................................. 1, 4, 14, 15

Fla. Admin. Code r. 64B15-14.014 ........................................... 11

Fla. Admin. Code r. 64B8-9.019 ............................................... 11

# INTRODUCTION

This case presents a question of exceptional importance: whether a state may, consistent with the Equal Protection Clause, ban or severely restrict access to medical care for an entire class of individuals when animus toward that group is a motivating factor. Plaintiffs respectfully submit this Motion for Reconsideration because the Court's order granting a stay pending appeal ("Stay Order") overlooks or misapprehends certain points of law and fact that, properly understood, would require denial of a stay. The Stay Order threatens immediate and severe harm to a vulnerable population and raises fundamental questions about the proper application of constitutional principles. Plaintiffs respectfully request that the Court vacate its Stay Order and deny Defendants' request for a stay pending appeal.

The panel majority's decision to grant a stay of the district court's trial decision and judgment rests on a misapprehension of several fundamental legal principles. First, the majority erroneously concluded that the district court likely misapplied the presumption of legislative good faith in conducting its analysis of discriminatory intent under the framework established in *Village of Arlington Heights v. Metropolitan*

*Housing Development Corp.*, 429 U.S. 252 (1977). The majority stated that the district court's acknowledgement that "a significant number of legislators" were motivated at least in part by a desire that patients receive proper medical care "should have been the end of" the district court's consideration of whether Florida's statute and rules were motivated in substantial part by an improper discriminatory purpose. Stay Order at 5–6. But *Arlington Heights* does not require proof that all or most legislators were motivated by animus, which would set a standard that is virtually impossible to meet and that would effectively negate this long and well-established doctrine. What *Arlington Heights* requires is "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." 429 U.S. at 266. Under *Arlington Heights*, "[w]hen there is proof that a discriminatory purpose has been *a motivating factor in the decision*, . . . judicial deference is no longer justified." *Id.* at 265–66 (emphasis added). The Stay Order's imposition of a requirement that a plaintiff must prove that all or most legislators were motivated by animus conflicts with *Arlington Heights*.

Moreover, the Stay Order considers only the district court's finding of animus in connection with statements made by legislators concerning

the Florida statute. The Stay Order does not address the other evidence on which the district court's animus findings were based, including extensive evidence of bias and irregularity in the process leading to the promulgation of the challenged administrative rules by the Department of Health ("Department") and Boards of Medicine ("Boards"). The district court found the promulgation of the challenged rules was riddled with evidence of animus motivating the Department and the Boards. The Stay Order does not discuss this substantial record.

Second, as the dissent points out, the Stay Order inaccurately characterizes the district court's discussion of the "same-decision defense" as an attempt to incorporate a mixed motive analysis into the determination of whether an improper discriminatory purpose motivated Florida's statute and rules. *See* Stay Order at 6; Dissent at 4. Having found, based on substantial evidence, that an improper discriminatory purpose was "a substantial or motivating factor in the state's decision," the district court faithfully followed relevant precedent, which required it to then consider "whether the state can show that the provision would have been enacted in the absence of" such animus. *Thompson v. Sec'y of State for Ala.,* 65 F.4th 1288, 1297 (11th Cir. 2023) (quoting *Johnson v.*

*Gov. of Fla.*, 405 F.3d 1214, 1217 (11th Cir. 2005) (en banc)). The Stay Order's conclusion that the district court should not have performed this analysis conflicts with precedent and should be reconsidered.

Third, the panel majority stated that "*even if the district court were correct in its animus decision*, heightened scrutiny under the Equal Protection Clause does not apply to invidious discrimination based on a non-suspect class." Stay Order at 7 (emphasis added). This statement is directly at odds with this Court's precedent. In *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023), the Court held that heightened scrutiny would apply if a state's decision to ban medical care for transgender individuals was "a pretext for invidious discrimination." *Id.* at 1230. This statement also conflicts with *Arlington Heights*, which held that although laws or regulations that do not facially discriminate based on a suspect characteristic ordinarily are not subject to heightened scrutiny, proof of a discriminatory purpose means that this deferential level of review is no longer justified. *See* 429 U.S. at 265–66.

Given the exceptional importance of the constitutional questions at stake and the immediate threat of irreparable harm to transgender Floridians, Plaintiffs respectfully request that the Court reconsider its

Stay Order, correct these misapplications of precedent, and enter a new order denying a stay pending appeal.

## PROCEDURAL HISTORY

Following a bench trial, the district court found that Florida's statute and rules were enacted with discriminatory animus against transgender individuals. The district court's opinion included detailed findings establishing that the legislative and rulemaking processes were infected by an improper purpose to single out transgender people for adverse treatment.

Defendants moved the district court for a stay of its judgment and injunction, which was denied due to Defendants' failure to make a strong showing that they are likely to succeed (Doc.243 at 2-3), the complete lack of record evidence supporting Defendants' allegations of injury to the state or to anyone else (*id.* at 3-5), the abundance of evidence demonstrating irreparable harm to plaintiffs (*id.* at 5-6), and the public interest calling for leaving in place the status quo as it existed prior to the adoption of the challenged rules and statue (*id.* at 6). Defendants then moved this Court for a stay of the district court's judgment and injunction. In a 2-1 decision, a panel granted a stay pending appeal. The

majority found that the defendants had made a strong showing of likely success on the merits, reasoning that the district court had likely misapplied the presumption of legislative good faith and improperly applied intermediate scrutiny. Judge Wilson dissented, reasoning that the majority failed to properly defer to the district court's factual findings and mischaracterized its legal analysis.

## ARGUMENT

## I. THE STAY ORDER'S REQUIREMENT OF PROOF THAT ALL OR MOST LEGISLATORS WERE MOTIVATED BY ANIMUS CONFLICTS WITH ARLINGTON HEIGHTS

The panel majority concluded that the district court's *Arlington Heights* analysis likely misapplied the presumption of legislative good faith. This conclusion mischaracterizes the district court's careful and nuanced analysis of the evidence of discriminatory intent. The district court did not, as the Stay Order suggests, improperly impute the animus of a few legislators to the entire body. Instead, as the dissent points out, the district court "recognize[d] animus as the driving factor for the bill's consideration at all." Dissent at 4. The district court's order on the merits meticulously documented numerous statements by bill sponsors, high-ranking administration officials, and other legislators that evinced clear anti-transgender bias. Doc.223 at 42–47.

6

The district court also found that other factors identified by the Supreme Court in *Arlington Heights* were present based on the trial record—notably, the fact that the impact of Florida's statutory and regulatory restrictions on access to medical care falls exclusively on transgender Floridians, the fact that the state had numerous less-restrictive alternatives to a ban on medical care, and the fact that the statute and rules were accompanied by other contemporaneous legislative measures demonstrating anti-transgender bias. *See* Doc.223 at 40-41, 51-52, 64.

The district court's findings also detailed similar statements, procedural irregularities, and the creation of a "deeply flawed, bias-driven report" in connection with the promulgation of administrative rules by the Department and Boards, both before and after enactment of the statute. *Id.* at 48, 52-61. It found that these officials "imposed requirements that have no medical justification and were plainly intended to prevent or impede patients from receiving gender-affirming care." *Id.* at 53–54. In particular, the court found that the consent forms promulgated by the Boards "are untrue and misleading in substantial respects, omit any discussion of benefits, address not only risks of

treatments a patient will receive but also of treatments the patient will not receive, include incomprehensible provisions no patient could be expected to understand, and are plainly intended to dissuade patients from obtaining gender-affirming care, not to ensure that patients are fully informed of the relevant risks and benefits." *Id.* at 54. These factors, which were present throughout the legislative and regulatory processes, provided strong evidence of discriminatory intent under the framework established in *Arlington Heights*.

The Stay Order concludes that once the district court found that a substantial number of legislators were likely motivated at least in part by a desire to ensure that patients receive proper medical care, "[t]hat should have been the end of it" for the *Arlington Heights* analysis. Stay Order at 6. In so concluding, the panel necessarily created a requirement that a party seeking to establish an improper discriminatory purpose must prove that all or most of the relevant decisionmakers were motivated solely by such an improper purpose. That requirement conflicts with *Arlington Heights,* which imposes no such test.

*Arlington Heights* held that although "disparate impact alone is not enough . . . to prevail on an equal-protection challenge to a facially

neutral, otherwise-rational decision, a plaintiff [may prevail by showing] that invidious discriminatory purpose was at least 'a' motivating factor in the decision." Doc. 223 at 39 (quoting *Arlington Heights*, 429 U.S. at 266). In particular, *Arlington Heights* pointed out the impropriety of requiring proof that all or most legislators were motivated by animus, or that a discriminatory purpose was the sole or even the predominant factor motivating the decisionmakers:

> [*Washington v.*] *Davis* [426 U.S. 229 (1976)] does not require a plaintiff to prove that the challenged action rested solely on racially discriminatory purposes. Rarely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern, or even that a particular purpose was the 'dominant' or 'primary' one. In fact, it is because legislators and administrators are properly concerned with balancing numerous competing considerations that courts refrain from reviewing the merits of their decisions, absent a showing of arbitrariness or irrationality. But racial discrimination is not just another competing consideration. When there is a proof that a discriminatory purpose has been *a motivating factor* in the decision, this judicial deference is no longer justified.

429 U.S. at 265–66 (emphasis added). *Arlington Heights* did not create a requirement that plaintiffs prove that all or most legislators were solely motivated by animus, as the Stay Order does. *See Romer v. Evans*, 517 U.S. 620, 634 (1996) (finding ballot initiative supported by majority of

voters in Colorado to be "born of animosity toward the class of persons affected").

To the contrary, *Arlington Heights* requires that courts conduct "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." 429 U.S. at 266. That evidence may include (1) "the impact of the official action" and whether it falls more heavily on a particular group, (2) "[t]he historical background of the decision" and whether it is part of "a series of official actions taken for invidious purposes," (3) "[t]he specific sequence of events leading up to the challenged decision," and (4) "contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *Id.* at 266–68.

The district court's careful opinion includes detailed and specific findings on each of these factors. The Stay Order's suggestion that courts must ignore clear evidence of animus unless it is expressed by all or most legislators is inconsistent with *Arlington Heights* and threatens to create an insurmountable barrier to proving discriminatory intent.

Additionally, the Stay Order focuses exclusively on the district court's discussion of the statements of legislators as evidence of improper

discriminatory purpose. It does not address other substantial evidence supporting the district court's finding of animus during the rulemaking process that predated the legislation. Well before enactment of the statute, the Boards engaged in a separate 9-month rulemaking process that concluded in March 2023 with the enactment of rules prohibiting medical care for transgender adolescents. *See* Fla. Admin. Code r. 64B8-9.019, r. 64B15-14.014. The district court's animus findings were based not only on the statements of legislators, but also on extensive evidence of bias and irregularity in this administrative process, which influenced both the Boards' rules and legislators considering the statute. The district court's order on the merits included specific findings related to the animus motivating the rules, including the Boards of Medicine "arrang[ing] for speakers to oppose gender-affirming care" at "orchestrated public hearings" and "single-mindedly pursu[ing] the predetermined outcome sought by the Governor and Surgeon General." Doc.223 at 52-54; *see also id.* at 48, citing *Dekker v. Weida,* 679 F. Supp. 3d 1271, 1281 (N.D. Fla. 2023) (including findings of fact about the state "retain[ing] only consultants known in advance for their staunch opposition to gender-affirming care" and characterizing the GAPMS

report relied upon by the Boards and the legislature as "from the outset, a biased effort to justify a predetermined outcome, not a fair analysis of the evidence.")

The Court should grant reconsideration to correct the Stay Order's misapplication of relevant precedent and address its failure to consider extensive record evidence that would require denial of a stay under a proper application of that precedent.

## II. THE STAY ORDER'S CONCLUSION THAT THE DISTRICT COURT SHOULD NOT HAVE ANALYZED THE SAME-DECISION DEFENSE CONFLICTS WITH PRECEDENT

As the district court correctly found, when a court finds that animus was a motivating factor for government action under the *Arlington Heights* framework, that is not necessarily the end of the analysis. The government may prevail on the claim by proving that "the decisionmakers would have made the same decision anyway, without regard to the animus." Doc.223 at 61 (citing *Hunter v. Underwood*, 471 U.S. 222, 228 (1985); *Thompson*, 65 F.4th at 1297; *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977)). Examining the trial evidence on this issue, the district court concluded that "the defendants have not shown that a majority [of decisionmakers],

if not motivated also by anti-transgender animus, would have made the same decision—would have voted to ban gender-affirming care across the board for all minors, without regard to their own circumstances, without regard to the views of their own parents and treating professionals, and contrary to the widely accepted professional standards of care." Doc.223 at 63.

As the dissent notes, the district court's discussion of the same-decision defense does not represent "an injection of Title VII mixed-motive theory" into the analysis, but "a continued discussion of animus" under the *Arlington Heights* framework. Dissent at 4–5. As the district court noted, this mode of analysis is authorized by and derived from cases such as *Hunter, Thompson*, and *Mt. Healthy*. This Court's precedent in *Thompson* clearly describes the nature of the inquiry:

> Determining whether a facially neutral law violates the Equal Protection Clause involves a two-step analysis. First, we "examine whether racial discrimination was a substantial or motivating factor in the state's decision . . . ." . . . If the plaintiffs succeed in making this showing, "we then ask whether the state can show that the provision would have been enacted in the absence of any racially discriminatory motive."

*Thompson*, 65 F.4th at 1297 (quoting *Johnson*, 405 F.3d at 1217).

The district court performed precisely the type of analysis described in cases such as *Thompson*. The Stay Order conflicts with clear precedent in concluding that the district court should not have engaged in such an inquiry to determine whether Florida's statute and rules violate the Equal Protection Clause. The Court should reconsider the Stay Order to correct this error.

## III. THE STAY ORDER'S STATEMENT THAT HEIGHTENED SCRUTINY WOULD NOT APPLY EVEN IF ANIMUS WAS ESTABLISHED CONFLICTS WITH CLEAR PRECEDENT ON THIS ISSUE

In determining that heightened scrutiny applies to Florida's statute and rules, the district court properly centered its analysis on this Court's directive in *Eknes-Tucker* to examine whether the record established invidious discrimination. *See Eknes-Tucker,* 80 F.4th at 1230; *see also Adams v. St. Johns County*, 57 F.4th 791, 810 (11th Cir. 2022) (en banc) ("[A] disparate impact on a group offends the Constitution when an otherwise neutral policy is motivated by 'purposeful discrimination.'") (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979)).

The Stay Order departs from these precedents' clear holdings that the presence of an invidiously discriminatory purpose requires careful scrutiny under the Equal Protection Clause even if government action

does not facially discriminate based on a suspect classification. The Stay Order states that "even if the district court were correct in its animus decision, heightened scrutiny under the Equal Protection Clause does not apply to invidious discrimination based on a non-suspect class, and '[n]either the Supreme Court nor this court has recognized transgender status as a quasi-suspect class.'" Stay Order at 7 (quoting *L.W. ex rel. Williams v. Skrmetti*, 73 F.4th 408, 419 (6th Cir. 2023), *cert. granted,* No. 23-477, 2024 WL 3089532 (U.S. June 24, 2024)).

The Stay Order conflicts with Circuit precedent on this point. *Eknes-Tucker* concluded, in the clearest possible terms, that a law banning medical care for transgender minors would be subject to heightened equal protection scrutiny if the evidence demonstrated it was enacted for a discriminatory purpose. The Court held: "the regulation of a course of treatment that only gender nonconforming individuals can undergo would not trigger heightened scrutiny unless the regulation were a pretext for invidious discrimination against such individuals. And the district court did not find that Alabama's law was based on invidious discrimination." *Eknes-Tucker,* 80 F.4th at 1229–30. *Eknes Tucker*'s holding does not make application of heightened scrutiny based on an

improper legislative purpose dependent on whether the group that is targeted for such discrimination has previously been recognized as a suspect or quasi-suspect class. Quite the opposite: the Court held, in the specific context of a law that subjects transgender individuals to adverse treatment, that heightened scrutiny is applicable where invidious discrimination was a motive for the law.

*Eknes-Tucker*'s seemingly unambiguous holding followed a similar analysis in the Court's en banc decision in *Adams*. There, the Court upheld a school policy requiring students to use multi-user bathrooms based on "biological sex" and held that this policy did not facially discriminate against transgender students. The Court held that the challenge to the policy "amount[ed] to a claim that the bathroom policy has a disparate impact" on transgender students. *Adams,* 57 F.4th at 810. The Court noted that "disparate impact on a group offends the Constitution when an otherwise neutral policy is motivated by "purposeful discrimination." *Id.* (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979)).

Nothing in this Court's or the Supreme Court's precedents suggests that disparate impact claims of this type are limited to claims alleging

discrimination against individuals based on membership in a previously recognized suspect or quasi-suspect class. *See Romer*, 517 U.S. at 634–35 ("If the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare . . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest.") (quoting *Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973)). The Court in *Adams* stated that it had "grave 'doubt' that transgender persons constitute a quasi-suspect class." *Id.* at 803 n.5. Those doubts, however, did not lead the Court to conclude that disparate-impact equal protection claims may not be asserted by transgender plaintiffs. To the contrary, the Court proceeded to analyze whether there was evidence to support such a claim, ultimately concluding that there was "no evidence suggesting that the School Board enacted the bathroom policy 'because of ... its adverse effects upon' transgender students." *Id.* at 810 (quoting *Feeney,* 442 U.S. at 279). If the Stay Order were correct in asserting that disparate impact claims are unavailable to transgender plaintiffs, there would have been no need for *Adams* to engage in this analysis.

This statement from the Stay Order also conflicts with *Arlington Heights.* There the Supreme Court held that while government action

that does not facially discriminate based on a suspect characteristic ordinarily is not subject to heighted scrutiny, proof of a discriminatory purpose means that this deferential level of review is no longer justified. *See* 429 U.S. at 265–66. The Supreme Court did not indicate that this principle is limited to claims alleging discrimination on a previously recognized suspect basis.

## CONCLUSION

For the foregoing reasons, the Court should grant reconsideration of the Stay Order and enter a new order denying a stay pending appeal.

Respectfully submitted,

*s/Thomas E. Redburn. Jr.*

Christopher F. Stoll                   Thomas E. Redburn, Jr.
Kelly Jo Popkin                       Maya Ginsburg
NATIONAL CENTER FOR LESBIAN LOWENSTEIN SANDLER LLP
RIGHTS                                1251 Avenue of the Americas
870 Market Street                     New York, NY 10020
Suite 370                             (212) 262-6700
San Francisco, CA 94102
(415) 365-1320                        Sarah Warbelow
                                      Cynthia Cheng-Wun Weaver
Simone Chriss                         HUMAN RIGHTS CAMPAIGN
Chelsea Dunn                          FOUNDATION
SOUTHERN LEGAL COUNSEL                1640 Rhode Island Avenue NW
1229 NW 12th Avenue                   Washington, D.C. 20036
Gainesville, FL 32601                 (202) 993-4180
(352) 271-8890

Chris Erchull
GLBTQ LEGAL ADVOCATES &
DEFENDERS
18 Tremont
Suite 950
Boston, MA 02108
(617) 426-1350

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

1. This response complies with the length limits of Fed. R. App. P. 27(d)(2)(A) because it contains 3,471 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Century Schoolbook size 14-point font with Microsoft Word.

Date: September 3, 2024

*s/ Thomas E. Redburn, Jr.*
Thomas E. Redburn, Jr.

*Counsel for Plaintiffs-Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Thomas E. Redburn. Jr.*
Thomas E. Redburn, Jr.
*Counsel for Plaintiffs-Appellees*
